UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>YVELISSE GONZALEZ RODRIGUEZ )<br>) | Criminal No. 04 CR 10220 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS FRUITS OF UNLAWFUL SEARCH AND SEIZURE

NOW comes the defendant, by and through undersigned counsel, and submits this Memorandum of Law in support of her Motion to Suppress Fruits of an Unlawful Search and Seizure.

### FACTS

On May 21, 2004, at approximately 1:30 A.M., the defendant arrived at Logan International Airport in Boston, Massachusetts, on Air Jamaica flight number 0049 from Montego Bay, Jamaica. Upon entering Terminal E of the Airport, the defendant was approached by a number of uniformed United States Customs officials. She was then held and questioned by these United States Customs officials initially in English. (The defendant is Spanish-speaking.) The defendant was detained and questioned in this fashion for another two and a half (2 1/2) hours.

At approximately 4:00 A.M., the numerous, uniformed United States Customs officials presented the defendant with a written consent form, for her to sign, to X-Ray

her person. Surrounded by numerous United States Customs officials, the defendant signed the consent form. At, or about 5:45 A.M. that morning, United States Customs had the defendant transported to Whidden Memorial Hospital in Everett, Massachusetts to be X-Rayed. At approximately 7:00 A.M., the defendant passed pellets which were then tested and found to contain heroine. Thereafter, the defendant was placed under arrest.

## ARGUMENT

Each person is to be free of unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution. The search warrant clause, found in the latter part of the Fourth Amendment, was designed as a protectionary measure to safeguard the right created in the Fourth Amendment – the right to be free from unreasonable searches and seizures. However, case law carves out exceptions to this safeguard, when circumstances so require. See, generally, (search warrant exception cases) Katz v. United States, 389 U.S. 347, (1967); Shneckloth v. Bustamonte, 412 U.S. 218 (1973); New York v. Belton, 453 U.S. 454 (1981); Spinelli v. United States, 393 U.S. 410 (1969); Carroll v. United States, 267 U.S. 132 (1925); South Dakota v. Opperman, 428 U.S. 364 (1976); New York v. Burger, 482 U.S. 691 (1987); National Treasury Employee's Union v. Von Raab, 489 U.S. 656 (1989). In either case, probable cause is the standard that the government must meet. See search warrant exception cases, supra and United States v. Harris, 361 U.S. 573 (1971).

A "border search" is an exception to the general requirement of probable cause, which must support a search with or without a warrant, and thus certain officers of the United States have the authority to stop and search, upon mere suspicion of illegal activity within their jurisdiction, persons and vehicles that cross international borders into

the United States. Rodriguez-Gonzales v. United States, 378 F.2d 256 (1967). Under the border exception, a United States Customs official stationed in an international airport would have jurisdiction to search passengers arriving on international flights. United States v. Hill, 430 F.2d 129 (1970).

Although the government is granted a greater flexibility and thus, more power in the execution of border searches, this in no way that a person's Fourth Amendment guarantee becomes extinguished or nearly vitiated. Rather, when a different standard such as reasonable suspicion applies, its requirements must also be met and must also be demonstrated by the government to the Court. United States v. Roberts, 37 Fed. Appx. 855, 856-857 (2002); United States v. Travis, 837 F. Supp. 1386, 1391-1392, 1395 (1993).

### I.  NO REASONABLE SUSPICION EXISTED FOR THE STOP OF DEFENDANT IN THE AIRPORT TERMINAL

The instant case is bare of anything preceding the stop of defendant that would give rise to reasonable suspicion. Before conducting a border search, government agents must possess a reasonable suspicion, supported by articulable facts that the person or thing to be searched is involved in illegal activity, such as smuggling contraband. See, generally, United States v. Richards, 638 F.2d 765 (1981).

In Travis, supra, an airport detective conducted a routine examination of the passenger list for a flight leaving Los Angeles to arrive in Cleveland (both cities known for drug distribution). Id. at 1387-1388. The airport detective admitted that his interest was piqued upon seeing the name 'Angel Chavez' on the flight list, as he was searching for possible narcotics smugglers. Id. Based on the Hispanic name, the airport detective initiated an investigation into the flight history and itinerary of the passenger named

'Angel Chavez'. Id. "The officer [airport detective] attached significance to the profile facts that the ticket was purchased five hours before flight and was a one-way ticket." Id. The officer located Chavez in the terminal (before the boarding of the flight). Id. Chavez was an English-speaking, African-American woman. Id. Chavez consented to a search of her luggage. Id. The search uncovered that her name was not Angel Chavez, rather her name was Angela Travis. Id. Further, the search discovered cocaine in her possession. Id. The Court held that the search of the defendant was lawful because there was reasonable suspicion supporting the search. Id. at 1395-1396. information Further, the Court found that the information obtained in the investigation of the defendant's flight history and itinerary (the so-called "pre-contact stage"), specifically 1) that the ticket was bought five hours before the flight and 2) that the ticket was one-way, demonstrated that reasonable suspicion existed. Id. [1]

The case at bar is distinguishable from Travis, supra, in many ways. Here, it is not clear from the Affidavit of Special Agent Eric LaForte whether the defendant was randomly stopped in the airport and her flight history and itinerary information was gathered after the fact or whether the flight history and itinerary were obtained in a pre-contact stage, like in Travis, supra. In either scenario, no reasonable suspicion existed to justify the stop of the defendant.

In Travis, supra, the detective relied on the information he obtained in his search of the flight history and itinerary of the defendant-passenger to create reasonable suspicion to stop the defendant, as is required by the Fourth Amendment to the United States Constitution and the border exception to the search warrant requirement. United States v. Aman, 624 F.2d 911 (1980). Further in Travis, supra, the detective simply

---

[1] This case was argued under an Equal Protection theory.

searched the defendant's luggage, which may or may not require individualized, real suspicion, and did not strip search the defendant or request X-Rays, as the United States Customs officials did in the case at bar. As articulated in <u>Aman</u>, "...our precedents clearly hold that a (sic) search involv[ing] more than a routine invasion of the traveler's privacy requires at least an individualized "real suspicion"" 624 F.2d at 912.

In the instant matter, it is not clear from the Affidavit of Special Agent Eric LaForte if the defendant was randomly stopped as she walked through Terminal E of Logan International Airport. If, in fact, the defendant was randomly stopped, then the stop must be held unlawful. The Affidavit of Special Agent Eric LaForte fails to set forth any suspicious conduct of the defendant to justify the stop. Furthermore, the Affidavit does not state any fact, circumstance or anything at all beforehand, that would have given rise to reasonable suspicion to stop this Hispanic defendant as she walked through Terminal E of Boston's Logan International Airport at 1:30 A.M. on May 21, 2004.

During the pre-contact stage in <u>Travis, supra</u>, the detective based the reasonable suspicion for the stop on that facts that the defendant 1) purchased a ticket five hours before the flight was scheduled for take-off and 2) the ticket was one-way only. Assuming there was a pre-contact stage, the facts learned by United States Customs officials in the flight history and itinerary of the defendant in the instant case did not give rise to reasonable suspicion, according to the <u>Travis</u> case. First, the defendant purchased her ticket much further in advance than the defendant in <u>Travis, supra</u>. Secondly, the defendant here had a round trip ticket. The only similarity to the <u>Travis</u> case is that both defendants booked airline tickets in Hispanic names. However, the defendant in the instant matter used her real name, unlike the defendant in <u>Travis, supra</u>. Under <u>Travis</u>

rationale, no reasonable suspicion existed in the instant case to support a search of the defendant, and therefore the stop was illegal.

## II. THE SEARCH WAS UNLAWFUL BECAUSE THE DEFENDANT'S CONSENT WAS NOT VOLUNTARY

Even if the stop of the defendant was legal, the search was unlawful because the defendant's consent to search was not voluntary. Rather, the defendant was intimidated and coerced into giving consent to the invasive search by a show of authority by numerous, uniformed United States Customs agents. Case law has held that consent searches are to be both voluntary and knowing. Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

In determining whether consent to search was freely and voluntarily given, the totality of the circumstances surrounding consent must be examined and thus, it is appropriate to consider characteristics of the defendant, such as age, maturity, education, intelligence and experience, as well as conditions under which consent to search was given, such as officer's conduct, number of officers present, and duration, location and time of the encounter. United States v. Lattimore, 87 F.3d 647 (1996). In examining all the surrounding circumstances to determine if in fact consent to search was coerced, the Court must take into account the possibly vulnerable subjective state of the defendant. Schneckloth, supra. First, the defendant was stopped by a group of uniformed, United States Customs officials at 1:30 in the morning as she walked alone through Terminal E of Logan International Airport. Second, the defendant does not speak English and was questioned in English by these government officials for a period of time. Third, the defendant was held at Logan Airport and questioned by these uniformed government officials for two and a half (2 1/2) hours. Finally, at approximately 4:00 A.M. the United

States Customs officials requested the defendant submit to X-Rays and they presented her with a written consent form. The defendant signed the X-Ray consent form surrounded by a myriad of uniformed, English-speaking, government officials, after she had been held for two and a half (2 1/2) hours in the middle of the night in Logan International Airport. The defendant did not feel free to leave or free to decline to sign the consent form presented to her. The defendant felt forced to sign the consent form in a coercive environment in which she was afraid and vulnerable.

Under the totality of the circumstances, the consent of the defendant was not freely or voluntary given, as required by Lattimore, supra; and Schneckloth, supra. The circumstances in which defendant's consent was sought were coercive, and the defendant certainly felt vulnerable.

## CONCLUSION

WHEREFORE, the defendant requests that this Honorable Court grant her Motion to Suppress all evidence seized from the X-Ray search of her body on the above-described grounds.

Respectfully submitted,
YVELISSE GONZALEZ-RODRIGUES
By her attorney,

RONALD IAN SEGAL
23 Central Avenue
Suite 605
Lynn, MA 01901
(781) 599-2800

## CERTIFICATE OF SERVICE

I, Ronald Ian Segal, Esquire, hereby certify that I have delivered copies of the Defendant's Motion To Suppress Fruits OF Unlawful Search And Seizure and Memorandum Of Law In Support Of Defendant's Motion To Suppress Fruits Of Unlawful Search And Seizure, by mailing same, postage prepaid, to the Assistant United States Attorney Maureen Hogan, One Courthouse Way, Boston, Massachusetts 02210, this 22, November, 2004.

_____
RONALD IAN SEGAL