UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              )
          v.                  )    Criminal No.  04 CR 10220 MLW
                              )
YVELISSE GONZALEZ RODRIGUEZ   )


            GOVERNMENT'S SENTENCING MEMORANDUM AND
      OPPOSITION TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

    On May 24, 2004, the Defendant Yvelisse Gonzalez Rodriguez ("Rodriguez") returned from a trip to Jamaica and arrived at Logan International Airport, Boston, Massachusetts, smuggling 585.3 grams of heroin into the United States within her alimentary canal.  On July 21, 2004, Rodriguez was charged in a one count Indictment with importation of heroin in violation of 21 U.S.C. §§952(a) and 960(a)(1).  On October 20, 2004, pursuant to a plea agreement with the government, Rodriguez pleaded guilty to the one count of the Indictment.

**I. AGREEMENT OF THE PARTIES AS TO GUIDELINES CALCULATION**

    In the plea agreement, the parties agreed that total quantity of heroin attributable to the Defendant was between four hundred (400) and seven hundred (700) grams, which holds her responsible for 585.3 grams she imported within her body. Accordingly, the parties agreed that the Defendant's base offense level was 28, pursuant to U.S.S.G. § 2D1.1(c)(6).  In the Presentence report, the United states Probation Office similarly determined that the Defendant's base offense level is 28.  Both

the Government and the Defendant remain in agreement as to the quantity of heroin for which the Defendant is responsible and as to the base offense level of 28.

The parties further agreed in the Plea Agreement that should the Court determine that the Defendant does not have more than 1 criminal history point, as determined under the Sentencing Guidelines, the Defendant satisfied the criteria set forth in U.S.S.G. § 5C1.2(a)(2-4) (the so-called "safety valve provision").  The Government further agreed, and it remains the position of the Government, that the Defendant satisfied the requirements of U.S.S.G. § 5C1.2(a)(5) by truthfully providing to the Government all information and evidence the Defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.  The Government has filed herewith *under seal* a copy of the report of the proffer provided by the Defendant regarding the instant offense to assist the Court in its determination as to whether the Defendant has satisfied this requirement.  As set forth in the Pre-sentence report, U.S. Probation takes the position that the Defendant is within Criminal History Category I and has satisfied the requirements of U.S.S.G § 5C1.2(a)(2-5).  Accordingly, the parties agree that the defendant is entitled to a two-level reduction under U.S.S.G § 2D1.1(a)(3).

In the plea agreement, the Government further agreed, and now recommends to the Court, a three-level downward adjustment

for acceptance of responsibility under U.S.S.G § 3E1.1.  The U.S. Probation department agrees with this adjustment for acceptance of responsibility.

With the safety valve reduction of two-levels and a three-level downward adjustment for acceptance of responsibility, the Defendant's Offense Level is 23.  With a Criminal history Category of I as found by the Probation department, based upon the agreement of the parties, the guideline imprisonment range is 46 to 57 months.  The Government takes the position that this is the appropriate calculation and that the Defendant should be sentenced within this guideline range of 46 to 57 months.

**II. THE DEFENDANT DID NOT HAVE A MINOR ROLE IN IMPORTING THE HEROIN AND IS THUS NOT ENTITLED TO A DOWNWARD ROLE REDUCTION**

The parties identified one issue for sentencing in the plea agreement.  The Defendant would take the position that she is entitled to a two-level reduction in her base offense level pursuant to U.S.S.G. § 3B1.2(b) based on her minor role in the offense conduct and the Government would oppose such a reduction.  Accordingly, the Defendant now argues that she is entitled to a two-level reduction because of her minor role in the offense, asserting that her role as a drug courier entitles her to such a reduction.

The mere fact that the Defendant was a drug courier, however, does not automatically entitle her to a mitigating role adjustment.  <u>United States v. Paz Uribe</u>, 891 F.2d 396, 399 (1st Cir. 1989) ("even if the court found that Paz was only a courier,

he would not automatically be entitled to a reduction"), <u>cert. denied</u>, 495 U.S. 951 (1990).  Role adjustments are only applicable where more than one participant was involved in the offense, U.S.S.G. § 3B1.2, n.3(C), and are "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, n.3(C). The Court must examine the nature of Defendant Rodriguez's relationship to other participants, the importance of her actions to the success of the venture, and her awareness of the nature and scope of the criminal enterprise.  The Defendant bears the burden of proving that she is entitled to a downward adjustment under § 3B1.2.  <u>United States v. Gonzalez-Soberal</u>, 109 F.3d 64, 73 (1st Cir. 1997); <u>United States v. Ortiz</u>, 966 F.2d 707, 717 (1st Cir. 1992).

Here, Defendant Rodriguez has not met her burden of establishing that she was a "minor participant" and therefore entitled to a two-level decrease.  As the facts of this case show, rather than playing a minor role in the offense of conviction - the importation of heroin - the Defendant played the key, critical role of doing just that:  importing heroin from into the United States.  She is not charged with conspiracy or with any other defendants.  Instead, Rodriguez is charged alone with only <u>one count</u> of <u>importing heroin</u> into the United States. Although other persons may have instructed and directed her in the commission of this offense, the Defendant alone committed it and her participation was major, not minor.  She obtained a

passport, traveled to Curacao via Jamaica, and ingested 60 pellets containing 585.3 grams of heroin, a substantial quantity of heroin worth a substantial sum of money.  Then, she traveled back to the United States, smuggling the heroin inside her body.  Her participation was critical to the crime.

Under these circumstances, the Court should reject the Defendant's request for a role adjustment.  See, e.g., United States v. Cepeda, 907 F.2d 11 (1st Cir. 1990) (affirming refusal to give mitigating role adjustment where defendant "was only charged with one count of a four-count indictment, and that count described only the one transaction for which he was convicted"); United States v. Garcia, 920 F.2d 153, 155 (2nd Cir. 1990) ("[c]ouriers are indispensable to the smuggling and delivery of drugs and their proceeds"); United States v. Lopez-Gil, 965 F.2d 1124 (1st cir. 1992).

### III. THE PLEA AGREEMENT PRECLUDES THE DEFENDANT FROM SEEKING A DOWNWARD DEPARTURE ON ANY GROUND

Finally, in the plea agreement, the parties agreed that there was no basis for a departure from the sentencing range established by the United States Sentencing Guidelines, except as explicitly reserved in paragraph 7,[1] and that neither the Government nor the Defendant would seek a departure on any other ground from the Sentencing Guidelines.  The Defendant, however,

---

[1] No motion for departure under paragraph 7 of the plea agreement has been filed and thus, such a basis for departure is not at issue.

has violated this agreement and moved for a downward departure from the guidelines sentencing range on the basis of the Defendant's status as a deportable alien and the consequences flowing therefrom. In her sentencing memorandum, the Defendant also appears to be urging the Court to depart from the applicable sentencing range by citing the sentencing factors set forth in 18 U.S.C. § 3553(a). The defendant should be precluded by the plea agreement from making any such arguments for downward departure.

**IV. THE DEFENDANT'S STATUS AS A DEPORTABLE ALIEN AND CONSEQUENCES THEREFROM DO NOT WARRANT A DEPARTURE FROM THE APPLICABLE SENTENCING GUIDELINE RANGE.**

The Defendant has moved for a two-level downward departure, arguing that because she is a deportable alien, her sentence will be more severe than that of a U.S. citizen and she will be held for additional time after her sentence is completed pending deportation. Specifically, she asserts that she would be ineligible to serve her sentence in a minimal security facility or a community custody program. Defendant's bare assertions, however, are completely unsupported and thus, the Defendant has not satisfied her burden of establishing the facts that might entitle her to a departure. Moreover, the First Circuit has rejected similar arguments for departure based upon consequences resulting from deportable alien status. See, e.g., United States v. Maldonado, 242 F.3d 1, 4 (1st Cir. 2001) (defendant's status as deportable alien insufficient to remove case from heartland so as to warrant departure; vacating and remanding sentence in which

judge departed downward on basis of defendant's alien status); United States v. DeLeon, 187 F.3d 60, 69 (1st Cir. 1999) (rejecting argument that effect of alienage on conditions of confinement justified downward departure);  See also United States v. Vasquez, 279 F.3d 77, 81-82 (1st Cir. 2002) (defendant convicted of illegal re-entry following deportation not entitled to downward departure); See also United States v. Bahena, 223 F.3d 797, 807 (8th Cir. 2000) (observing that defendant's status as a deportable alien was "entirely attributable to his own voluntary acts" and that consequences flowing from that status "need not alter the consequences that he is suffering on account of his drug offenses").

    Not even the cases cited by the Defendant support her argument for downward departure.  In United states v. Restrepo, although the Second Circuit stated that a defendant's status as an alien might serve as a basis for departure, the Court rejected the same factual bases for such a departure that the Defendant asserts here, i.e., "(1) the unavailability of preferred conditions of confinement, [and] (2) the possibility of an additional period of detention pending deportation following the completion of sentence . . . ." 999 F.2d 640, 644 (2nd Cir 1993). Similarly, although the Court in United States v. Smith, concluded that a downward departure might be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence, the Court

expressed no opinion as to whether a departure was appropriate based upon arguments similar to those now made by the Defendant. 27 f.3d 649, 655-656 (D.C. 1994).

The Defendant's bare assertions that she will suffer more severe consequences because she is a deportable alien do not even begin to meet the standards enunciated by the above courts to demonstrate that there is something unusual or atypical about her case to warrant a departure.  She has offered no facts to justify her implied assertion that every alien-defendant should be granted a benefit – an automatic downward departure based on status alone – not available to other defendants who are United States citizens or to demonstrate that she will suffer a substantial, undeserved increase in the severity of the conditions of her imprisonment.  Even assuming that the Defendant might not be released to community confinement and might mave to spend some additional time incarcerated while her administrative deportation proceeding is resolved (a factor depending in large measure on whether she chooses to contest deportation), this is not the type of severe, undeserved penal consequence for which a downward departure is warranted.  In sum, the Defendant should not be granted a downward departure due to her alien status and possible deportation.

**Conclusion**

Based on the foregoing, the Government respectfully requests this Court to reject the Defendant's claims for a minor role adjustment and for a downward departure that is precluded by the Defendant's own agreement in the plea agreement with the Government.  The Government requests the Court to determine the guideline sentencing range to be 46-57 months, based upon a Total Offense Level of 23, and to sentence the Defendant to a period of incarceration of 46 months, 3 years supervised release, and a $100 special assessment.  Such a sentence is a reasonable one given the nature and circumstances of the offense, the culpability of the Defendant, and the history and characteristics of the Defendant.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                              By:   /s/ Maureen B. Hogan
                                        MAUREEN B. HOGAN
                                        Assistant U.S. Attorney

Dated: June 12, 2006